**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **CARRIE CRONK and JEFFERSON** | ) | |
| **BARBOSA, Individually and on behalf of** | ) | |
| **other similarly situated current and** | ) | |
| **former employees,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:17-cv-00059** |
| | ) | **Judge Aleta A. Trauger** |
| **v.** | ) | |
| | ) | |
| **TRG CUSTOMER SOLUTIONS, INC.** | ) | |
| **d/b/a IBEX GLOBAL SOLUTIONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Plaintiffs Carrie Cronk and Jefferson Barbosa bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, individually and on behalf of other similarly situated current and former employees of the defendant, TRG Customer Solutions, Inc., doing business as IBEX Global Solutions ("IBEX"). In addition to bringing a collective action under the FLSA, they assert supplemental state-law claims for breach of contract on behalf of a Rule 23 class. (Complaint, Doc. No. 1.) Under both theories, they seek to recover unpaid wages and overtime pay owed to them and similarly situated employees who have worked at IBEX's call centers in the United States.

Now before the court are the following motions: (1) IBEX's Motion to Compel Arbitration and to Dismiss the Action (Doc. No. 49); (2) the Intervenor Plaintiffs' Motion to Dismiss or, in the Alternative, to Stay Plaintiffs' Rule 23 Class and Section 216(b) Collective Claims (Doc. No. 44); and (3) Plaintiffs' and Intervenor Plaintiffs' Motion to Consolidate

Actions Pursuant to Fed. R. Civ. P. 42 (Doc. No. 85). The first and third motions have been fully briefed, but the plaintiffs never responded to the intervenor plaintiffs' Motion to Dismiss. The court nonetheless finds that the intervenor plaintiffs' Motion to Dismiss (Doc. No. 44) has been superseded by the joint Motion to Consolidate.

For the reasons set forth herein, the court will grant the defendant's motion to compel the named plaintiffs, Carrie Cronk and Jefferson Barbosa, to pursue individual arbitration of their claims but will deny the motion to dismiss the case in its entirety. The court will grant the plaintiffs thirty days within which to file a motion to amend the Complaint to add one or more new named plaintiffs, if indeed there are IBEX employees who seek to pursue claims against IBEX in this forum and did not sign valid and enforceable arbitration agreements. Because it remains to be seen whether either this action or the related action, *Myers v. TRG Customer Solutions, Inc.*, No. 1:17-cv-0052, will be able to proceed in this court, the court will not rule at this time on the Motion to Consolidate.

## I. Procedural and Factual Background

IBEX is a Delaware corporation that operates eighteen call centers in five countries, including several in the United States. (Compl. ¶¶ 10, 12.)

Plaintiff Cronk resides in Spring Hill, Tennessee. Plaintiff Barbosa resides in Columbia, Tennessee. (Compl. ¶ 13.) Both Cronk and Barbosa were formerly employed by IBEX as non-exempt "Call Center Workers" at its Spring Hill, Tennessee call center. (*Id.*) The Complaint does not indicate when either plaintiff began working for IBEX or when their employment terminated. The Complaint also does not include factual allegations regarding the circumstances under which the plaintiffs' employment ended.

The defendant alleges that, "[a]t the outset of Plaintiffs' relationships with IBEX, Plaintiffs each separately signed" a document titled "Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate Acknowledgment and Acceptance." (Doc. No. 50, at 2.) The form signed by Cronk is dated October 22, 2015. By signing, she "acknowledge[d] that [she had] received and read the Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate and will abide by it as a condition of [her] employment." (Doc. No. 50-1, at 7.) The form electronically signed by Barbosa, dated February 9, 2016, likewise confirms his receipt of the Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate and agreement to abide by it as a condition of his employment. (Doc. No. 50-2, at 7.) The Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate ("DDP"), to which the Acknowledgment and Acceptance forms are attached, contains the following language:

> *The Company and Employee mutually consent to the resolution, by final and binding arbitration, of any and all claims or controversies ("claim") that the Company may have against Employee or that Employee may have against the Company . . . , whether or not arising out of the employment relationship (or its termination), including but not limited to, any claims arising out of or related to this Agreement to Arbitrate (this "Agreement") or the breach thereof.*
>
> *. . . .*
>
> ***The claims covered by this Agreement include . . . <u>any claims of the Employee as a member or representative of a class, or in any other manner as a member or representative of a group. Parties to the Agreement waive any right they may otherwise have to pursue, file, participate in, or be represented in any claim brought in any court on a class basis or as a collective action or representative action. This waiver applies to any claim that is covered by the Agreement to the full extent such waiver is permitted by law. All claims subject to the Agreement must be mediated and arbitrated as individual claims. The Agreement specifically prohibits the mediation or arbitration of any claim on a class basis or as a collective action or representative action, and the arbitrator shall have no authority or jurisdiction to enter an award or otherwise provide relief on a class, collective or representative basis.</u>***

(DDP at 4, Doc. Nos. 50-1, 50-2 (emphasis in original).) The DDP identifies the claims that are subject to arbitration as "any disputes arising out of your employment or termination of employment," including but not limited to claims covered by the FLSA. (*Id.* at 2.) The DDP also specifies that it will survive the termination of the employee's employment. (*Id.* at 3.)

Cronk and Barbosa filed their Collective Action Complaint initiating this lawsuit on June 27, 2017, along with their Consents to Join. (Doc. Nos. 1, 1-1, 1-2.) Since that time, more than sixty other individuals have filed Consents to Join the lawsuit as party plaintiffs. (*See, e.g.*, Doc. No. 84 ("I hereby consent to join this or any subsequent action against the Defendant as an Opt-in Plaintiff to assert claims for violations of the FLSA 29 U.S.C. § 201, *et seq.*, and unpaid overtime and minimum wages as specified in the Collective Action Complaint.").)

On July 12, 2017, the plaintiffs in two related cases ("intervenor plaintiffs") —*Andrews et al. v. TRG Customer Solutions, Inc.*, No. 1:14-cv-0135 (M.D. Tenn.) ("*Andrews*"), and *Myers v. TRG Customer Solutions, Inc.*, No. 1:17-cv-0052 (M.D. Tenn.) ("*Myers*") (collectively, the "Related Cases")—filed a Motion to Intervene (Doc. No. 9) under Rule 24 of the Federal Rules of Civil Procedure, arguing that the claims asserted in this lawsuit are identical to those asserted in the Related Cases and that the disposition of this case would potentially impair and impede the intervenor plaintiffs' ability to protect their interests in the Related Cases. The court granted that motion as unopposed. (Doc. No. 68.)

The intervenor plaintiffs filed their Motion to Dismiss or, in the Alternative, to Stay Plaintiffs' Rule 23 Class and Section 216(b) Collective Claims (Doc. No. 44) on August 18, 2017. In this motion, the intervenor plaintiffs request that the court enter an order that (1) bars the plaintiffs in this case from seeking certification of their Rule 23 class claims until after the resolution of such claims in *Andrews*; and (2) bars the plaintiffs in this case from seeking to

certify their case as a collective action or to seek court-authorized notice to potential members of the collective action until after the resolution of both *Andrews* and *Myers*. In support of their motion, the intervenor plaintiffs argue that the Tennessee breach of contract and unjust enrichment claims and FLSA overtime claims are identical to the claims asserted in the earlier-filed *Andrews* and *Myers* cases and that these steps are necessary to prevent the potential for duplication of effort, waste of judicial resources, and inconsistent rulings. They also argue that allowing this case to proceed parallel to *Andrews* and *Myers* creates a strong likelihood of confusing potential opt-in plaintiffs and that staying it will not prejudice the rights of Cronk and Barbosa to seek relief after resolution of *Andrews* and *Myers*. They argue that the filing of this duplicative class and collective action "represents precisely the type of situation where the Sixth Circuit's first-to-file rule should be applied in favor of the earlier-filed actions." (Doc. No. 44, at 2.) Finally, they point out that approximately ten percent of the opt-in plaintiffs in this case had already joined *Andrews*, demonstrating not just the potential for confusion but actual confusion on the part of IBEX employees. Cronk and Barbosa never responded to this motion.

However, more recently, the plaintiffs and intervenor plaintiffs filed a joint Motion to Consolidate Actions Pursuant to Fed. R. Civ. P. 42. (Doc. No. 85.) In this motion, the plaintiffs and intervenor plaintiffs contend that the most efficient method of litigating the claims in this case and in *Myers* is to consolidate the two cases in order to permit this action "to proceed in a single collective action case." (Doc. No. 85, at 2.) The plaintiffs and intervenor plaintiffs expressly recognize, however, that, if the court grants the defendant's pending Motion to Compel Arbitration, "it may limit or foreclose the ability of Plaintiffs and/or Intervenor Plaintiffs to litigate collectively." (Doc. No. 85, at 2.) IBEX opposes this motion. (Doc. No. 87.)

Meanwhile, IBEX filed its Motion to Compel Arbitration or to Dismiss and supporting

Memorandum. (Doc. Nos. 49, 50.) The plaintiffs have filed a Response opposing the motion. (Doc. No. 69.)[1] The defendant filed a Reply. (Doc. No. 73.)

During the pendency of the Motion to Compel, the intervenor plaintiffs also filed a Motion to Stay Ruling on Defendant's Motion to Compel Arbitration (Doc. No. 74), requesting that the court delay ruling on the motion in this case until after ruling on the virtually identical motion filed by the defendant in *Myers*. The court granted that motion (Doc. No. 76) and, in fact, has now issued a ruling in *Myers* granting the defendant's motion to compel plaintiff Myers to pursue her claims in an individual arbitration. *See Myers v. TRG Customer Solutions, Inc.*, No. 1:17-CV-00052, 2017 WL 5478398, at *8 (M.D. Tenn. Nov. 15, 2017).

## II.     Motion to Compel Arbitration

### A.     Standard of Review

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, if a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). The FAA creates a strong presumption in favor of arbitration, *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003), and any doubts regarding arbitrability must be resolved in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

Nevertheless, an arbitration agreement may be voided for the same reasons for which any contract may be invalidated under state law, "provided the contract law applied is general and not specific to arbitration clauses." *Id.* at 393. "In order to show that the validity of the agreement

---

[1] The plaintiffs actually filed two Responses, several days apart. (Doc. Nos. 67, 69.) The court construes the later-filed document to be either a duplication or an amendment of the first. The court discerns no material difference between the two and has considered only the later-filed document.

is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks omitted).

Generally, the court must make four "threshold determinations" before compelling arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*See Fazio*, 340 F.3d at 392 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

## B.    Discussion

IBEX argues that the court should grant its Motion to Compel Arbitration because: (1) both Cronk and Barbosa signed the DDP, which contains a valid agreement to arbitrate and an express waiver of the right to bring a class action or collective action; and (2) all of the claims in this lawsuit fall within the scope of the arbitration agreement. It argues, based on the DDP, that "[a]ll claims . . . must be mediated and arbitrated as individual claims." (Doc. No. 50, at 8 (quoting DDP, at 2).) IBEX also argues that the court should dismiss the case after referring it to arbitration, as the court's retention of jurisdiction during the pendency of arbitration would serve no purpose.

Cronk and Barbosa, in their Response, do not dispute that they signed the DDP, nor do they contest the enforceability or validity of the agreement on the basis that it lacks mutuality, was signed under duress, or is otherwise void or voidable for any of the other standard reasons provided by state law for challenging the enforceability of a contract. Their claims clearly fall

within the scope of the agreement to arbitrate, and they make no attempt to argue otherwise. Instead, they argue only that the defendant's motion is foreclosed by the Sixth Circuit's recent ruling in *National Labor Relations Board v. Alternative Entertainment, Inc.*, 858 F.3d 393 (6th Cir. 2017). That decision, they assert, makes it clear that "'[m]andatory provisions that permit only individual arbitration of employment-related claims are illegal pursuant to the NLRA and unenforceable pursuant to the FAA's savings clause'" and, therefore, that "the Court cannot enforce such arbitration agreements." (Doc. No. 69, at 5 (quoting *N.L.R.B. v. Alt. Ent'mt, Inc.*, 858 F.3d 393 (6th Cir. 2017).) The plaintiffs further posit that, "[e]ven if *Alternative Entertainment* did not render the purported arbitration agreements unenforceable, those arbitration agreements would still not apply to all of the Named Plaintiffs' claims since they do not state specifically that they apply retroactively to cover claims that arose prior to the purported signing of such agreements." (Doc. No. 69, at 7.)

In its Reply, the defendant contends that the plaintiffs' Response is premised entirely on a "serious misinterpretation of Sixth Circuit precedent." (Doc. No. 73, at 1.) Citing this court's prior ruling in *Doe #1 v. Déjà Vu Consulting Inc.*, No. 3:17-CV-00040, 2017 WL 3837730 (M.D. Tenn., Sept. 1, 2017), IBEX insists that the disposition of its Motion to Compel is not governed by *Alternative Entertainment*, which applies only to claims brought "pursuant to the NLRA." (Doc. No. 73, at 2.) It also argues that other Supreme Court and Sixth Circuit precedent strongly suggests that waivers of the right to bring a class action generally and a collective action under the FLSA specifically are enforceable.

Addressing the plaintiffs' "confusing" alternative argument, IBEX points out that the plaintiffs have not contested IBEX's assertion that they signed the DDPs at the "outset of their employment," as a result of which they have no claims for unpaid wages that predate the signing

of the DDPs.

### 1. *Alternative Entertainment*

*Alternative Entertainment* arose from a labor dispute involving changes in certain employees' compensation and their ability to discuss their concerns about salary and wages with each other. In that context, the Sixth Circuit held that an arbitration provision prohibiting "concerted activity" violated Section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157.

Section 7 states that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." *Id.* Further, "[c]ontractual provisions that 'illegal[ly] restrain[]' employees' rights under the NLRA are unenforceable." *Alt. Ent'mt*, 858 F.3d at 401 (quoting *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 360, 365 (1940)). In *Alternative Entertainment*, the Sixth Circuit construed "other concerted activities" to include collective "resort to administrative and judicial forums," including class or collective actions, for the purpose of "achiev[ing] more favorable terms or conditions of employment." *Alt. Ent'mt*, 585 F.3d at 402 (quoting *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565–66 (1978); *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011)). The court framed the issue before it as implicating both the NLRA and the FAA and as requiring a determination of whether the arbitration provision in question, with its class and collective action waiver, was enforceable under both of those statutory schemes. It ultimately held that

> an arbitration provision requiring employees *covered by the NLRA* individually to arbitrate all employment-related claims is not enforceable. Such a provision violates the NLRA's guarantee of the right to collective action and, because it violates the NLRA, falls within the FAA's saving clause.

*Alt. Ent'mt*, 585 F.3d at 408 (emphasis added).[2]

The few district courts within the Sixth Circuit confronted directly with the task have been divided in their interpretation of *Alternative Entertainment*. This court has, on two previous occasions, concluded that a collective action under the FLSA does not qualify as "'concerted activit[y]' protected by the NLRA" and, therefore, that *Alternative Entertainment* has no bearing on this type of case. *Doe #1 v. Deja Vu Consulting Inc.*, No. 3:17-CV-00040, 2017 WL 3837730, at *12 (M.D. Tenn. Sept. 1, 2017); *Myers v. TRG Customer Solutions, Inc.*, No. 1:17-CV-00052, 2017 WL 5478398, at *5–6 (M.D. Tenn. Nov. 15, 2017). Another district court, in *Pyle v. VXI Global Solutions, Inc.*, No. 5:17-CV-220, 2017 WL 5132765 (N.D. Ohio Nov. 6, 2017), granted the defendant's motion to compel individual arbitration on the basis that *Alternative Entertainment* did not apply to the facts of the case before it, because the arbitration agreement did not contain an express waiver of the right to pursue a class or collective action. The court concluded that "the decision in *Alternative Entertainment* was not intended to apply to arbitration agreements that are silent on the issue of classwide arbitration." *Id.* at *5. Instead, the agreement is governed by those decisions from the Supreme Court and the Sixth Circuit holding that "a party may not be compelled under the FAA to submit to class arbitration unless there is a

_____

[2] The Sixth Circuit recognized a circuit split on this issue. The Seventh and Ninth Circuits have held that arbitration provisions mandating individual arbitration of employment-related claims violate the NLRA and fall within the FAA's saving clause. *See Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1160 (7th Cir. 2016); *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 985–86 (9th Cir. 2016). The Fifth and Eighth Circuits have held, to the contrary, that arbitration provisions mandating individual arbitration of employment-related claims do not violate the NLRA and are enforceable under the FAA. *See Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013, 1018 (5th Cir. 2015) (reaffirming its earlier holding in *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013)); *Cellular Sales of Mo., LLC v. NLRB*, 824 F.3d 772, 776 (8th Cir. 2016) (reaffirming its earlier holding in *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013)). In 2017, the Supreme Court granted writs of certiorari in *Morris*, *Lewis*, and *Murphy Oil* and consolidated the three cases. 137 S. Ct. 809 (2017). That decision remains pending.

contractual basis for concluding that the party *agreed* to do so." *Id.* at *4 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)) (emphasis in original). The *Pyle* court also noted, however, that it agreed with this court's conclusion in *Doe #1* that "enforcing the provisions of the FLSA through a collective action does not constitute 'concerted activit[y]' under the NLRA" and, therefore, that the motion to compel arbitration in that case "could be granted for this additional reason." *Id.* at *5 n.5.

Conversely, in *Hubbard v. Dolgencorp, LLC*, No. 1:17-CV-1133-STA-EGB, 2017 WL 4323588 (W.D. Tenn. Sept. 28, 2017), the district court was unpersuaded by this court's *Doe #1* opinion. In *Hubbard*, the named plaintiffs in a putative FLSA collective action had signed voluntary arbitration agreements that contained express waivers of the right to bring a class or collective action. The court there found, based on *Alternative Entertainment*, that the waivers violated the NLRA and were therefore unenforceable.[3]

Although this court concluded in *Myers* that *Alternative Entertainment* was not applicable in part because the arbitration agreement at issue in *Myers* did not contain an express waiver of the right to pursue a collective action, *see Myers*, 2017 WL 5478398, at *5, the court is ultimately not persuaded that there is a material difference between an arbitration agreement that is silent on the topic and one in which each party expressly waives the right to bring a class or collective action. The Supreme Court has expressly held that an arbitration agreement that is silent on the question of whether classwide or collective arbitrations are permissible cannot be presumed to encompass an agreement permitting class or collective arbitrations. In *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), the Court held that "a party may

---

[3] The court also concluded that the collective-action waivers were severable from the remainder of the arbitration agreements at issue. It therefore granted the defendants' motion to compel arbitration but allowed the plaintiffs to pursue their claims in arbitration collectively.

not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so," *id.* at 684, and that "it cannot be presumed the parties consented to [classwide arbitration] by simply agreeing to submit their disputes to an arbitrator." Based on *Stolt-Nielsen*, the Sixth Circuit has held that, when an arbitration agreement is silent regarding the availability of classwide arbitration, the agreement must be construed as prohibiting classwide arbitration. *See Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 596 (6th Cir. 2013) (holding in the context of a commercial billing dispute that an arbitration clause that was silent on the topic did not authorize classwide arbitration)[4]; *Huffman v. Hilltop Cos.*, 747 F.3d 391, 398–99 (6th Cir. 2014) (extending the holding in *Reed Elsevier* to apply to the case of a plaintiff who sought to pursue a collective action under the FLSA, stating: "[T]he parties' arbitration clause nowhere mentions classwide arbitration. We therefore conclude that the arbitration clause does not authorize classwide arbitration, and hold that the plaintiffs must proceed individually." (internal citation omitted)).

In other words, arbitration agreements that are silent on the topic of class and collective

---

[4] Notably, the court also rejected the defendant's claims that the agreement was unenforceable as unconscionable:

> The clause is indeed as one-sided as Crockett says: the clause favors LexisNexis at every turn, and as a practical matter makes it economically unfeasible for Crockett or any other customer to assert the individual claims that Crockett seeks to assert here. The clause provides that any arbitration of any dispute concerning LexisNexis's charges must occur in Dayton, Ohio, where LexisNexis is headquartered. The customer must pay his own legal fees, even if the arbitrator concludes that LexisNexis's charges were improper. And unlike many corporations that require arbitration of disputes with their customers, LexisNexis makes its customer split the tab for the arbitrator's fee.

> The idea that the arbitration agreement in this case reflects the intent of anyone but LexisNexis is the purest legal fiction. But all of these things—the one-sided nature of the arbitration clause, and its adhesive nature—were also present in *American Express Co. v. Italian Colors Restaurant*, [133 S. Ct. 2304 (2013)]. And there the Supreme Court held that, all of those concerns notwithstanding, the absence of a class-action right does not render an arbitration agreement unenforceable

*Reed Elsevier, Inc.*, 734 F.3d 594, 600 (6th Cir. 2013).

actions are construed to prohibit them and are routinely enforced. In the end, such agreements have the same effect as agreements containing an express waiver of the right to bring a class or collective action: they both require individual arbitration of the claims at issue. And, although the Sixth Circuit has not expressly addressed the question of whether express waivers of the right to bring a collective action under the FLSA are enforceable, its holding in *Huffman*, upholding an implied waiver, strongly suggests that it would answer that question in the affirmative. *See, e.g.*, *Huffman*, 747 F.3d at 399 ("[T]his court's precedent indicates that the parties must proceed in arbitration on an individual basis.").

Second, the court remains persuaded that neither a collective action under the FLSA nor a Rule 23 class action to enforce contractual rights qualifies as "concerted activit[y]" protected by the NLRA. As this court previously observed:

> The NLRA protects the right of employees "to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. While class or collective actions might qualify as concerted activities in some contexts, the language of the statute implies that the "other concerted activities" protected by the statute are activities related to collective bargaining and the achievement of "more favorable terms or conditions of employment." *Alt. Ent'mt*, 585 F.3d at 402. Pursuing litigation for the purpose of requiring an employer to comply with federal law is not the same as seeking more favorable terms or conditions of employment by contract.

*Doe #1*, 2017 WL 3837730, at *12.

Finally, the court finds that the reach of *Alternative Entertainment* is limited to claims brought "under the NLRA"—that is, claims concerning unfair labor practices that fall within the purview of the NLRA. This case, which merely brings employment claims under the FLSA and breach of contract claims under state law, is not covered by the NLRA. As the court stated in *Doe #1*:

> The facts of *Alternative Entertainment* arose from that particular arena. It was

brought by the NLRB, seeking enforcement of a prior decision and order by the NLRB in a classic labor dispute, and the court was not called upon to address the confluence of the FLSA and the FAA.

*Doe #1*, 2017 WL 3837730, at \*12. For this reason, too, the court finds that *Alternative Entertainment* is not applicable here.

Because the plaintiffs' objection to the enforceability of the DDP is premised entirely on the applicability of *Alternative Entertainment*, the court finds that the DDP is valid and enforceable, that the plaintiffs' claims fall within the scope of the DDP, and that the waiver of the right to bring a class or collective action is not invalid under *Alternative Entertainment* and is, instead, presumptively valid under *Stolt-Nielson* and *Huffman*.

The court is also not persuaded by the plaintiffs' suggestion that they may have wage-and-hour claims under the FLSA and state law that predate the effective dates of their respective DDPs. Although neither party has presented actual evidence of the plaintiffs' hire dates and they are not alleged in the Complaint, the defendant maintains that the DDPs were signed at "the outset" of each plaintiff's employment, and the plaintiffs have not contested that assertion. If the plaintiffs do indeed have claims that predate the DDPs, they may file a motion to alter or amend judgment in conjunction with proof of their hire dates.

In sum, the court will grant the defendant's Motion to Compel Arbitration, and the plaintiffs will be compelled to pursue their claims in the context of an individual arbitration proceeding.[5]

### 2. Whether to Dismiss

The plaintiffs do not address the defendant's argument that, if the named plaintiffs'

---

[5] The parties have not raised in this court the question of whether a single arbitration presenting the claims of two individual plaintiffs satisfies the DDP's requirement that "[a]ll claims subject to the Agreement must be mediated and arbitrated as individual claims." (DDP at 4.) That, presumably, will be a question for the mediator/arbitrator.

claims are referred to arbitration, the case should be dismissed, other than with a terse assertion that "IBEX has not shown that the rest of the putative class has arbitration agreements." (Doc. No. 69, at 8.) Despite the plaintiffs' failure to cogently make their point, and in fairness to the more than sixty opt-in plaintiffs, the court finds that compelling arbitration of the named plaintiff's claims does not automatically require dismissal of the entire case at this juncture, for the reasons articulated in *Myers*, 2017 WL 5478398, at *7. Even though the named plaintiffs will be compelled to pursue their claims in an individual arbitration, the opt-in plaintiffs' claims remain pending, and it is still an open question whether the opt-in plaintiffs signed arbitration agreements. Accordingly, the court will not dismiss this action in its entirety and will instead grant the plaintiffs thirty days within which to file a motion to substitute the named plaintiffs with one or more appropriate plaintiffs who believe in good faith that they have not signed valid and enforceable arbitration agreements.

## III.     Intervenor Plaintiffs' Motion to Dismiss or Stay and Joint Motion to Consolidate

As previously indicated, the plaintiffs never responded to the intervenor plaintiffs' Motion to Dismiss or Stay under the first-to-file rule, but now the plaintiffs and intervenor plaintiffs have filed a joint motion to consolidate this case with *Myers*. The court construes the latter motion as superseding the first and will deny the Motion to Dismiss or Stay on that basis.

The court further finds that resolution of the Motion to Consolidate should be stayed in light of the fact that the court is granting the Motions to Compel Arbitration in both *Myers* and this case and that it remains to be seen whether there are any individuals among the opt-in plaintiffs in either case who have not signed valid and enforceable arbitration agreements.

## IV.     Conclusion

For the reasons set forth herein, IBEX's Motion to Compel Arbitration and to Dismiss the

Action (Doc. No. 49) will be granted in part and denied in part. The court will grant that portion of the motion seeking to compel arbitration of the named plaintiffs' claims, but will deny that portion of the motion seeking dismissal of this action in its entirety. The court will grant the plaintiffs thirty days within which to file a motion to amend the Complaint to substitute appropriate named plaintiffs from among the current opt-in plaintiffs. If no motion to amend is filed within that time frame, the defendant may renew its motion to dismiss.

The court will also deny without prejudice the intervenor plaintiffs' Motion to Dismiss or Stay (Doc. No. 44) and will defer ruling on the Motion to Consolidate (Doc. No. 85) pending resolution of the question of whether any claims remain before the court in *Myers* or in this case.

An appropriate Order is filed herewith.

ENTER this 17th day of November 2017.

ALETA A. TRAUGER
United States District Judge